Roane, Judge.
The question is, Whether the present case differs materially from the former; for, if not, the decision, in that, must govern this. It is said that a difference arises from the greater powers of a court of equity to dis *396 pense observances which the Jaw requires. .But there is no foundation for the distinction: On the contrary, the construction of statutes is peculiarly proper for courts of law; and, when made, those of equity are bound by it; for the latter can no more dispense with the requisitions of a statute, unless from particular circumstances of fraud, force or accident taking a case out of its operation, than courts of common law can : Both being equally bound by the legislative will, acting within its prescribed limits. There is consequently no foundation for relief, upon the ground of the change of the tribunal. In other respects, the case appears to be the same now, that it was before; and, consequently, as the judgment, at that time, has fixed the fate of the cause irrevocably, it may seem unnecessary to examine the merits of that decision. But I cannot refrain from expressing my entire approbation of the principles then established, however severely they may operate upon the appellees. To put men whose duties were occasional only, and who were often not employed, for the public, at all, upon the same footing with the veteran, whose service was constant, and who was continually exposed to the hardships and dangers of war, would have violated every principle of propriety; and therefore could never have been intended. Accordingly a plain distinction is made through all the laws upon the subject, between the troops who served uninterruptedly during the whole time of the war, and those which were raised for occasional service only. For the first, express remuneration during life is made: For the latter, no such provision is declared, and they claim it by equitable construction only. But what equity have they to the same rewards, when, by the terms of their organization they were subject to less duty, and, in,point of fact, performed less service ? Therefore, notwithstanding the verbal criticisms which have been attempted on the statutes, I think the sound interpretation is with the former decision. If it be said, that, the events of the war having called them into almost continual service, they are entitled to the same remuneration with *397 the others, the answer is, that that begs the question, and supposes, contrary to all just interpretation, that subsequent , events can add a term to the law, so as to make it comprehend cases not provided for at the enactment. But, even under that point of view, the fact would not be with them; for the constituted authorities, who conducted the war, were alone competent to say, when it was ended; and they having fixed its termination to the 22d of April, 1783, no averment lies against it, according to the opinion of the court upon the former occasion. But the appellees thought proper to retire, before that period, upon the terms of their original organization, and followed their own pursuits, at home, while their companions did duty in the camp. They therefore cannot justly claim to be put upon the same footing with them in point of compensation. It is said, however, that they had, in reality, served through the war, as they considered, when they left the army, that peace had been established by the preliminary articles; and that, as no hostilities were committed afterwards, the ulterior services of their companions in time of peace, and for which they received an adequate reward, did not give them a preferable right, as the claims of the appellees were perfected by the ceasing of hostilities, although peace was not formally announced. But that mode of reasoning will not help the case. For it cannot be permitted to military men to say, when the war is over; that can only be decided by the constituted authorities, who are acquainted with the whole ground, and may often find it necessary to keep up the forces, in order to compel a ratification of the articles. If, indeed, the appellees had been driven from their posts, and not permitted to do duty any longer, something more might be said for them (although the argument of the attorney general, that government ought not to have kept an expensive establishment entire, merely for the sake of benefiting a few officers, is very strong). But there was no compulsion. It was an act of volition in themselves. For instead of insisting, that as the legion was in service they had a right to occupy their sta *398 tions in it, and that their commands ought not to be taken from them, they, upon the first rumour of peace, accepted the offer of retirement, and voluntarily went home. Under such circumstances, they cannot justly claim to be put upon the same footing with those who remained on duty, and whose time was constantly devoted to the public service, during the whole period of the war. However, as they probably went through a good deal of service, I regret that they did not apply to the legislature instead of resorting to the courts. But as they have chosen the latter alternative, I can only say, that the case is the same now that it was before, and that the former judgment concludes the cause. My opinion therefore is, that the decree should be reversed, and the bill dismissed.
Carrington, Judge, concurred.
Lyons, Judge. As there does not seem to be any material difference between this and the former case, it would be sufficient to say so; and that the cause was concluded by the judgment then given. But, as the propriety of that decision has been questioned, I think it proper to state the reasons which appear to me to support it.
The appellees alledge, that they are entitled upon the ground of contract under the act of 1779.
But there could be no contract without mutual obligations; and there were none in this case. For, although government had promised half pay for the service, the officers had not stipulated to perform it; and consequently were under no obligation to do so.
It was said, however, that the offer on one side and acceptance on the other, constituted the contract. But that is a mere petitio principii, which changes the words, and not the argument. For there was no acceptance in.fact: nor could there be any, as the officers had not bound themselves to serve during the war, and were at liberty to resign whenever they pleased.
*399 There was, consequently, no contract; but the provision was a bounty only, which the government gratuitously offered to pay for the service when performed, and not before.
It was next urged, that the act of 1790, provides for the case.
But, to say nothing of the improbability that the legislature meant to put those who had performed partial service only, upon a footing with those who had done full duty, there does not appear to be any difference in the requisitions of the two statutes, as the same classes precisely, are provided for, that is to say, such as continued in actual service to the end of the war, and such supernumeraries as were called back to their commands, and served through the remainder of it.
Of course the same objection lies to the claim under both statutes. For the appellees were not in actual service during the whole war; nor were they ever called into service again, after they had left the army.
But then it was said, that the claimants are within the equity of. the statutes, if not within the expression; because they served to the end of actual hostilities, which was the true termination of the war, as the declaration of peace was but a ceremony, which the court may dispense with.
To this, two objections occur at the threshold :
1. That it would be contrary to the policy of the statutes j for as the prime motive of the half pay for life was to induce officers to continue in service during the war, the object would have been frustrated, if a partial service only, would have secured the reward.
2. That substantial performance never entitles to a gratuity, as the condition requires complete fulfilment, and the claimant has no equity; for cujus est dare, ejus est disponere. Thus, if a creditor agrees to accept of £100 in discharge of his debt, provided the money is paid on or before a particular day, and the debtor, before the day, pays £ 99, but omits to discharge the remaining twenty shillings within the prescribed time, he cannot be relieved on the ground of sub *400 stantial performance, under pretence that the interest upon the £ 99 had been equal to the twenty shillings. For the condition made payment of the whole £ 100 indispensable. Sewell v. Musson, 1 Vern. 210.
Therefore, as the statutes required full service as the condition of the recompense, it is not sufficient for the appellees to say, that they performed duty part of the time; and that their services were not wanted afterwards.
But.there was not even a substantial performance. For how can a man be said to have served to the end of the war, when the constituted authorities regarded it as still subsisting } when military preparations were still going on; and when the armies were still kept upon establishment, to guard against the operations of the enemy ?
It is in vain to urge the preliminary articles; for they were subject to revision, and might never have been ratified. The most that can be said for such a state of things is, that it was a suspension of hostilities; not that it was the end of the war. For if the negotiations had broken off, and hostilities had been again carried on to the 22d of April, could it have been said, that men who had retired from the service during the false appearance of peace, and had never done duty afterwards, had actually served to the end of the war? Nobody will affirm it; because the resumed hostilities would have been part of the old, and not a new, war.
This shews the propriety of judge Roane’s remark, that the date of peace should be left to the declaration of the constituted authorities, as they are acquainted with the whole ground, and may often find it necessary to keep the armies on foot, in order to compel a ratification of the articles.
Besides, there must be some standard. For, if every officer may judge when there is peace and retire from the service, every soldier may do the same; and thus, while the country is deluding itself with a fancied peace, the enemy may be looking on, ready to take advantage of the error, and strike some important blow, before resistance can be reorganized. Public safety therefore requires, that those to *401 whom the conduct of the war is entrusted, should be the organs to proclaim the peace.
Accordingly the best writers, upon subjects of this kind, refer the period of peace to the declaration of government; and decide that infractions of it, by individuals before it is proclaimed, cannot be punished. Vattel, lib. 4, cap. 3, § 24.
But it is said, that according to that mode of reasoning, all the officers would be excluded; because the discharge was in April, and the definitive treaty was not signed until September. That however does not meet my idea. For I have said, that the constituted authorities are the arbiters of peace and war; and, as they know best when the danger is over, their judgment is necessarily decisive.
Consequently, when congress gave information to the state executive that the war was at an end, and the latter proclaimed it and disbanded the troops, their sentence was final, and no averment lay against it 5 for government could not deny what it had declared upon record.
I regret that these gentlemen are thus situated j and wish it were in my power to relieve them. But I am bound to pronounce the law, and not to indulge my own wishes.
The decree is unanimously reversed, and the following is to be the entry;
“ The court is of opinion, that the bounty of half pay-given by the act of assembly passed in the May session of the year 1779, to the officers of the state line in the said act described, was an extra reward or gratuity for their services from thenceforward, and until the end of the war, if they should serve so long, or becoming supernumerary should again enter the said service being required so to do, and continue therein until the war ended, and that therefore only such of the said officers as were in service in the same or in any higher rank at the end of the war when the army was disbanded, at which time the said half pay was to commence, are entitled to the said bounty, according to the true intent and meaning of the said act: And it appearing by the bill in this cause, that the said Christopher Roane *402 deceased, and the other officers, in the said bill named, now appellees, were supernumerary and discharged as such before the provisional articles of peace, signed between America and Great Britain at Paris, were duly notified to the executive of this state, or solemnly published in America according to the law and usage of nations in such cases, and the army was disbanded in pursuance thereof, and that they did not again enter into the said service in the same or any higher rank, and continue therein until the end of the war, the court is of opinion that they are not entitled to the said bounty of half pay for life, and that the said decree of the high court of chancery is erroneous, therefore it is decreed and ordered, that the same be reversed and annulled; that the bill be dismissed; and that the appellees pay to the appellants their costs expended, as well in the prosecution of their appeal aforesaid here, as about their defence in the said high court of chancery.”